# DASHNER et ux. v. BUFFINGTON et ux. et al., Appellants.

### Division One, November 26, 1902.

**Setting Aside Deed:** FRAUD: CONFIDENTIAL RELATION. Plaintiff and defendant, half-brothers, through their mother inherited land in two sections, in which their father had curtesy. He conveyed his interest to their grandfather and after the mother died the defendant did the same, thus leaving an undivided half interest in plaintiff. Soon after plaintiff became of age the grandfather devised the property in one section to defendant and that in the other to plaintiff, and put them in possession three years before his death. Afterwards defendant was informed by the abstracter that plaintiff had a half interest in the land devised to him, and according to his evidence, stated to plaintiff that he had been apprised by the abstracter that plaintiff "had an interest in his," defendant's land; and if so defendant had deeded more land to his grandfather than he intended, or knew he owned, and that the deed to that extent could be set aside, and that he thereupon proposed an exchange of deeds quitclaiming to each other their respective interests in the piece of which the other was in possession, and plaintiff said, "All right," and the exchange was made without any further consideration. The plaintiff stated that he did not know until informed by his elder brother, whom he looked up to for advice, that he had any interest in the part devised to the defendant, and that his brother said nothing to him about having wrongfully included land in his deed to his grandfather, but that he specifically stated that he had a half interest in the land of which plaintiff was in possession and that plaintiff had a half interest in his; and thereupon they exchanged deeds of quitclaim. *Held,* first, that in passing upon the question of fraud it must be kept in view that defendant obtained from plaintiff a valuable grant for which he paid nothing, and that he did not obtain it as a gift, but as a purchase or exchange for value; *second,* if defendant's testimony is to be believed, it shows implicit trust and reliance of plaintiff in defendant, for at that time defendant's deed to his grandfather was more than thirteen years old; *third,* if defendant's testimony is not true, then plaintiff's alone remains and it establishes the fact that he was deceived; *fourth,* these facts justify the setting aside of the deed as having been obtained through fraud.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Lozier & Morris* for appellants.

(1)  Fraudulent misrepresentation does not furnish ground for equitable relief, unless it formed a material inducement to the agreement sought to be rescinded.  Powell v. Adams, 98 Mo. 598; Wannell v. Kem, 57 Mo. 478.  The statement or representations of Buffington, whatever they were, could not have formed a materal inducement for the execution of the deed, for the reason that Dashner well knew the condition of the title so far as the interest of Buffington was concerned.  (2)  The court must be satisfied by the clearest evidence that the fraudulent representations were made, and made under such circumstances as to show that the contract was founded upon them.  Wannell v. Kem, supra; Bailey v. Smock, 61 Mo. 123; Dunn v. White, 63 Mo. 181.  In this case the testimony of Frank M. Dashner stands alone, and is contradicted by the testimony of every other witness in the case, including that of his grandmother and three uncles.  (3)  It is not enough that the misrepresentations should have been inaccurate and misleading, or even willfully false; plaintiff must have rested the transaction on the faith of them.  Bryan v. Hitchcock, 43 Mo. 527; Parker v. Marquis, 64 Mo. 38; Nouman v. Oberle, 96 Mo. 66.  (4)  False representations will not afford sufficient ground for the rescission of a contract, where the complaining party had at hand the means of knowing the real facts, and neglected to avail himself of same.  Lewis v. Land Co., 124 Mo. 672.  According to Dashner's own testimony they were all in Turner's abstract office when the quitclaim deeds were executed and delivered, and there were at hand, and easily accessible, maps and abstracts showing the chain of title and the condition of the title to each tract of land conveyed by these quitclaim

deeds. There was nothing concealed and Dashner, if he did not know the condition of the title, could have with ordinary care or diligence, ascertained all the facts concerning it. (5) Where the representations are not such as are calculated to impose upon a man of ordinary prudence, or if he neglects the means of information easily within his reach, he must suffer the consequences of his own folly and credulity. Dunn v. White, 63 Mo. 181; 8 Am. and Eng. Ency. Law (1 Ed.), p. 643; 1 Story Eq. Jur. (3 Ed.), secs. 199-200a. The testimony shows Dashner to be a young man of unusual business ability. For six years prior to his leaving West Virginia he was foreman for his grandfather of a large plantation embracing 2,300 acres of land; and the surroundings under which the deed sought to be set aside was made, show that he certainly neglected the means of information easily within his reach. He, therefore, is not entitled to the intervention of a court of equity, under the above authorities. (6) There were no misrepresentations made to plaintiff by defendant, Robert L. Buffington, by which plaintiff was misled, for the reason that plaintiff, Frank M. Dashner, was fully advised as to the condition of the title, and knew that Buffington had no interest in any lands in Carroll county, Missouri, except such as he received through his grandfather's will. Schelebrew v. Heintze, 117 Mo. 520; Gilmore v. Cook, 33 Mo. 25. (7) A party seeking to rescind a contract on the ground of fraud must return the consideration received as a condition precedent to recovery. Homuth v. Railroad, 129 Mo. 629; Morgan v. National Pump Co., 74 Mo. App. 437; Jenkins v. Ins. Co., 79 Mo. App. 55. Respondents can have no standing in a court of equity and their bill should have been dismissed, for the reason that they have not offered to return the consideration received, and convey back to appellant, Robert L. Buffington, the title received by Dashner through the execution and delivery of the deed from Buffington and wife to Dashner. The deed operated as a confirmation of the will of C. C. Miller so far as the land embraced within the terms of the deed are

concerned and would also preclude any action on the part of Buffington to set aside or reform the deed made by Buffington to his grandfather. (8) Misrepresentations by the vendor, to furnish a ground for equitable intervention, must be in reference to some material thing unknown to the vendee, either from not having examined, or from want of opportunity to be informed, or from absolute confidence reposed in the vendor. Holland v. Anderson, 38 Mo. 59; Clark v. Edgar, 84 Mo. 111.

*Hugh K. Rea* and *J. L. Minnis* for respondents.

(1) "Fraudulent misrepresentations in respect to the title to the land will entitle the aggrieved party to relief, where the misrepresentation is concerning something unknown to the party injured and he has been induced to act, or abstain from examination from some special confidence reposed in the other party, as, *e. g.*, where the vendor prevents the vendee from making an examination of the records by assurances that the title is perfectly good and the property is free from incumbrances; and upon the faith of such assurances and representations, the vendee abstains from making the proper examinations." Baily v. Smock, 61 Mo. 213. (2) Buffington admits that he knew he had conveyed his interest in all of said lands he inherited from his mother at the time he induced Dashner to make the deed sought to be set aside. His representation that he then owned an undivided one-half interest in the lands in section 28 was false. Dashner, being in ignorance of the condition of the title, believed and relied upon said false representations, and was thereby induced to make the deed to Buffington, for which he received no consideration whatever. This deed was, therefore, fraudulently procured, and should be set aside. Herman v. Hall, 140 Mo. 270; Holland v. Anderson, 38 Mo. 55; Baily v. Smock, supra. (3) Buffington had left the abstracter a few hours before he made the false representation to Dashner. Dashner had a right to assume

that Buffington knew the condition of the title and, therefore, was not guilty of negligence in failing to look further. Bank v. Hunt, 76 Mo. 139; Wannell v. Kem, 57 Mo. 478; Herman v. Hall, 140 Mo. 270. (a) Defendant prevented Dashner from making examination of the records by assurances that defendant owned an undivided one-half interest in the lands in section 28, and Dashner owned an undivided one-half interest in the lands in section 7. Upon the faith of this assurance and representation, Dashner abstained from making an examination. Bailey v. Smock, supra. (b) "Courts of equity are not inclined to encourage falsehoods and dishonesty by protecting one who is guilty of such fraud on the ground that his victim had faith in his word, and for that reason did not pursue inquiries that would have disclosed the falsehood." Bandurand v. Crawford, 22 Iowa 40; Webber v. Webber, 47 Mich. 569.

VALLIANT, J.—This is a suit in equity to cancel a deed made by plaintiffs to defendant Buffington on the ground that it was procured by fraud.

The undisputed facts of the case are as follows:

Dashner, the plaintiff, and Buffington, the defendant, are half-brothers, the only children and heirs at law of Elenor Dashner who died in 1875 owning considerable land in Carroll county, part of it being in section 7, township 51, range 23, and part in section 28, township 52, range 23. She left surviving her her husband and these two sons. The surviving husband in 1880 conveyed by deed his curtesy estate in the land to C. C. Miller, the father of Elenor Dashner and the grandfather of these two half-brothers.

In 1885 defendant Robert Buffington conveyed his interest in the land to his grandfather Miller. Thus, Miller, the grandfather, became the owner of the life estate by the curtesy in the whole land and of the fee to an undivided half, the fee to the other undivided half being in the plaintiff. The estate by the curtesy terminated in 1887 upon the death of the husband of El-

enor Dashner, but Miller remained in possession as theretofore and so continued until 1895, when, having made his will, he caused each of his two grandsons to be put in possession respectively of that part of the land which he had devised to him.

The grandfather died in March, 1898, leaving a will in which he devised the land in section 7 to defendant Robert Buffington, and a certain estate in that in section 28 to plaintiff Frank Dashner; he also devised other lands, not in question here, to each of them. After the death of their mother in 1875, the plaintiff, who was then two or three years old, and the defendant, who was nine or ten years old, went to their mother's parents in West Virginia. The defendant remained there until 1885 when he went to Kansas to live, and the plaintiff remained until 1895 when he came to Missouri to take possession of this land which he was to have under his grandfather's will. The defendant remained in Kansas until 1895 when he also came here, and took possession of the land his grandfather willed to him, and both were living here and in possession of their respective estates when their grandfather died in March, 1898.

In October, 1898, defendant Buffington was having an abstract of his title made with a view of obtaining a loan, and it was then called to his attention that his half-brother, the plaintiff Dashner, had an undivided half interest in the land in section 7. He then went to the plaintiff and proposed that they exchange quitclaim deeds, he to quitclaim his interest in the land in section 28 to plaintiff, and the plaintiff to quitclaim his interest in the land in section 7 to the defendant. To this the plaintiff agreed, and the two brothers with their wives went to the office of the abstracter of titles a few days thereafter and the deeds were accordingly executed and exchanged. There was no consideration passed and none contemplated except the exchange of properties. About sixty days after this transaction the plaintiff discovered that the defendant, when he made his quitclaim deed, had no title to the land in section 28, and de-

manded a reconveyance to him of the land in section 7, which defendant refused, and this suit is brought to cancel the quitclaim deed made by the plaintiff to defendant.

The facts set out in the above statement are undisputed, but there are some facts in dispute. It is alleged by the plaintiff that he had been accustomed to look up to his elder brother for advice and confided in him and that when the defendant came with this proposition to exchange deeds he told the plaintiff that he had discovered that they each had an interest in the other's land, that the plaintiff had an interest in section 7, and the defendant a like interest in section 28, and that the abstracter of titles had advised that they make this exchange of quitclaim deeds to avoid trouble to them and their heirs; that plaintiff trusted in what the defendant said and executed the deed as he requested. That was the plaintiff's testimony. On that point the defendant testified that when he made the deed to his grandfather in 1885 he did not know that the deed covered any part of section 28 and did not know that his mother had owned any part of that section; he understood that he was conveying his interest in section 7, which was the home place and was land he knew his mother had owned. That when he went to the plaintiff to propose the exchange of quitclaim deeds he told him that Mr. Turner, the abstracter of titles, said that the records showed that he, the plaintiff, had an interest in section 28, and that if that was the case he, the defendant, had deeded land to his grandfather that he had not intended, and that that part of the deed could be set aside, "but if you will give me a quitclaim deed to my land, I will quitclaim you, and there will be no hereafter about it, that is, I will make no claim against the estate for my interest in the land."

There was also testimony on the part of the defendant which showed that while the plaintiff lived with his grandparents in West Virginia the fact that the defendant had sold his interest in the Carroll county lands to

his grandfather was frequently spoken of in the family and often in the presence of the plaintiff.

The testimony on the part of the plaintiff in support of the allegation that he looked up to defendant for advice and confided in him did not go farther than to show that the defendant was the plaintiff's older brother and that they were on friendly terms.

The petition states that after the exchange of the quitclaim deeds the defendant executed a deed of trust on the land to secure a loan and the parties to that deed were made defendants, but the plaintiffs took a voluntary nonsuit as to them and they were dismissed.

There was a finding and decree for plaintiffs, cancelling the quitclaim deed as prayed, and the defendant appeals.

There is little if any conflict of opinion between the learned counsel as to the law of this case; the decision must rest mainly on a question of fact. If the defendant procured the quitclaim deed through the means stated by the plaintiff, the act was indefensible and the deed should be annulled. As a legal proposition that is not contested, but the fact is denied. In approaching the main question in this case there is one fact which stands out prominently and which we can not lose sight of; that is, that the defendant has obtained from the plaintiff a valuable grant for which he has given nothing. And it is further to be observed that he did not obtain it as a gift, but ostensibly as a purchase or exchange for value; that he professed to give value in exchange; that he did give that which had the semblance of value, but which in fact was of no value and he knew it. He is now by his defense here endeavoring to maintain the advantage so acquired, and the evidence we are to weigh is chiefly his own testimony, put forward to support a claim that has nothing to commend it in a forum of conscience. The most that can be said for this defense is that the plaintiff was neglectful of his own interests in failing to investigate the title and that he had

no right to rely on what the defendant may have said about it.

There can be no doubt but that the plaintiff was deceived, for he took the defendant's quitclaim deed to the land in section 28 in exchange for his own deed to that in section 7. Can we believe that when he took it he had no assurance that it carried some title? And if he had such assurance from whom did he receive it? He was himself so uninformed as to the title that he did not know until the defendant told him that he had an interest in section 7, and he testified that when the defendant gave him that information, he also told him that he, the defendant, had a like interest in section 28. The conduct of the parties in making the exchange of deeds was consistent with the truth of that testimony and was inexplicable on any other theory. If the plaintiff had not been made to believe that the defendant had an interest in section 28 there is no reason why he should have taken a deed from him purporting to convey such an interest. The circumstances of the case so corroborate the testimony of the plaintiff that it carries conviction.

The defendant's testimony was that he did not tell the plaintiff that the abstracter of titles had discovered that each had an interest in the other's land, but that he told him that the abstracter had said that it looked from the records as if the plaintiff had an interest in his, defendant's land, and that if that was the case he, defendant, had deeded more land to his grandfather than he intended, or knew he owned, and that the deed to that extent could be set aside, and thereupon he proposed the exchange of deeds to which the plaintiff without hesitation replied, "All right, I will do it."

If that testimony is to be believed, it is stronger than any evidence the plaintiff adduced to sustain his allegation of implicit trust and reliance in the defendant.

This transaction occurred in October, 1898, and the defendant was talking about setting aside a deed which he had made to his grandfather in 1885 upon a very

vague allegation of mistake on his part as to what the deed contained. We can not imagine that two men dealing with each other at arm's length would close a transaction of that kind upon such a statement without a question and without hesitation. If it occurred in that way then it was a case of implicit trust and confidence and the confidence was misused, and if it did not occur in that way, then it occurred as the plaintiff testified it did, and in either event the chancellor was justified by the evidence in finding the issues for the plaintiff.

The judgment is therefore affirmed. All concur.